## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNO DOE and DOS DOE, | : | |
| c/o JDKatz Attorneys at Law | : | |
| 4800 Montgomery Ln, Ste 600 | : | |
| Bethesda, MD 20814 | : | |
| Plaintiffs, | : | |
| | : | |
| | : | **Civil Action No.** 1:26-cv-1002 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| THE ISLAMIC REPUBLIC OF | : | |
| IRAN; THE ISLAMIC | : | |
| REVOLUTIONARY GUARD | : | |
| CORPS, MINISTRY OF | : | |
| INTELLIGENC AND SECURITY OF: | | |
| THE ISLAMIC REPUBLIC OF IRAN: | | |
| and DOES 1-50 | : | |
| c/o Ministry of Foreign Affairs | : | |
| Khomeni Avenue, United Nations | : | |
| Street Tehran, Iran | : | |
| Defendants. | : | |

## COMPLAINT

### INTRODUCTION

1. This action is brought by Plaintiffs UNO DOE and DOS DOE ("Plaintiffs"), naturalized United States citizens, against Defendants Islamic Republic of Iran ("Iran"), the Islamic Revolutionary Guard Corps ("IRGC"), the Ministry of Intelligence and Security of the Islamic Republic of Iran ("MOIS"), and DOES 1–50 (collectively, "Defendants") for damages arising from acts of torture, hostage taking, and international terrorism.

2. Plaintiffs bring this action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 et seq., particularly § 1605A, the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 note, the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), to seek redress for the

1

brutal campaign of terror that Defendants have directed at Plaintiffs across multiple decades, multiple countries, and multiple forms of violence and intimidation.

3. Plaintiff Uno Doe is a political economist, media commentator, and democracy advocate who has publicly opposed the Islamic Republic of Iran for more than four decades. As a result of his opposition activities — including organizing mass demonstrations, advising Congress, and training federal law enforcement and intelligence personnel on the threat posed by the Iranian regime — Plaintiff Uno Doe has been subjected to a continuous and escalating campaign of surveillance, harassment, threats, and physical violence by agents of Defendants, both within the United States and abroad.

4. Plaintiff Dos Doe, the wife of Uno Doe, has been targeted by Defendants as a means of pressuring and intimidating Plaintiff Uno Doe. She has received threatening phone calls at all hours, been subjected to surveillance, and suffered serious physical and psychological harm as a direct result of Defendants' conduct.

5. Defendants' acts constitute grave breaches of international law, violations of fundamental human rights, and acts of international terrorism as defined by United States and international law.

## PARTIES

6. Plaintiff Uno Doe is a naturalized United States citizen residing in Florida. He was born in Tehran, Iran and came to the United States in 1984. He was granted United States citizenship on July 4, 2003. He holds advanced degrees including two master's degrees and a doctorate in International Political Economy and Public Policy from the University of Southern California (USC). Plaintiffs proceed under pseudonyms due to the well-documented and ongoing threat of violence and retaliation from agents of the Islamic Republic of Iran against individuals who publicly oppose the regime. Plaintiffs' true identities are known to the Court and will be provided under seal upon request.

7.     Plaintiff Dos Doe is the spouse of Plaintiff Uno Doe and a naturalized United States citizen. She was born in Cherbourg, France and was a German citizen prior to her naturalization. She was granted United States citizenship on September 11, 2008. She resides in Florida with Plaintiff Uno Doe.

8.     Defendant Islamic Republic of Iran ("Iran") is a foreign sovereign designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)), Section 40 of the Arms Export Control Act (22 U.S.C. § 2780), and Section 620A of the Foreign Assistance Act (22 U.S.C. § 2371). The Government of the Islamic Republic of Iran was designated a state sponsor of terrorism by the U.S. Secretary of State on January 19, 1984. § 49 Fed. Reg. 2836 (Jan. 23, 1984). Iran provides material support and resources to the IRGC, MOIS, and various terrorist organizations and proxies throughout the world.

9.     Defendant Islamic Revolutionary Guard Corps ("IRGC") is the military organization established by Ayatollah Khomeini after the 1979 Iranian Revolution. The IRGC is an agency or instrumentality of Iran within the meaning of 28 U.S.C. § 1603(b) and is controlled by the Iranian government. On April 8, 2019, the United States designated the IRGC as a Foreign Terrorist Organization. The IRGC has engaged in terrorist activity and terrorism, including the acts described herein.

10.     Defendant Ministry of Intelligence and Security of the Islamic Republic of Iran ("MOIS") is the primary intelligence organization of the Islamic Republic of Iran. MOIS is an agency or instrumentality of Iran within the meaning of 28 U.S.C. § 1603(b) and is controlled by the Iranian government. MOIS agents and operatives have engaged in acts of terrorism, including the acts described herein.

11.     Pursuant to the test established by the United States Court of Appeals for the D.C. Circuit, the IRGC and MOIS must be treated as the State of Iran itself as that term is

used in 28 U.S.C. § 1608 of the Foreign Sovereign Immunities Act. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 149–50 (D.C. Cir. 1994)).

12.    Defendants DOES 1–20 are individuals who, at all relevant times, were officials, employees, agents, or operatives of Iran, the IRGC, or MOIS who participated in, ordered, authorized, or had knowledge of the acts described herein but whose identities are currently unknown to Plaintiffs.

13.    Defendants DOES 21–50 are individuals who, at all relevant times, acted as agents of Iran, the IRGC, or MOIS in carrying out the surveillance, harassment, intimidation, and physical attacks described herein, but whose identities are currently unknown to Plaintiffs.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331, 1332, and 1605A, and the Anti-Terrorism Act as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333. This suit falls within the "terrorism exception" to sovereign immunity under the FSIA, 28 U.S.C. § 1605A(a)(1), as it seeks money damages against a foreign state for personal injury caused by acts of torture, hostage taking, and the provision of material support for terrorism engaged in by officials, employees, or agents of Iran while acting within the scope of their office, employment, or agency. Additionally, to the extent any predicate acts occurred on United States soil, this Court has jurisdiction under 18 U.S.C. § 2333 as amended by JASTA.

15.    Plaintiffs are U.S. citizens and nationals of the United States within the meaning of the FSIA and were such at the time of the acts alleged herein. Defendant Iran has been designated a state sponsor of terrorism by the Secretary of State since January 19, 1984.

4

16.    This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1330(b), and venue is proper pursuant to 28 U.S.C. § 1391(f)(4), as this is a civil action against a foreign state.

17.    Defendants are not immune from the jurisdiction of this Court under the FSIA, 28 U.S.C. § 1605A, because this action seeks money damages against a foreign state for personal injury caused by acts of torture, hostage taking, and the provision of material support or resources for such acts, which were engaged in by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

18.    This action is timely under 28 U.S.C. § 1605A(b), which provides a ten-year statute of limitations running from the date the cause of action arose. The actionable predicate acts under § 1605A — including the February 2017 unlawful detention and physical assault in Los Angeles, the ongoing cyberattacks directed at Plaintiff Uno Doe, the threatening calls directed at Plaintiff Dos Doe, and the physical assault and encirclement in Washington, D.C. in April 2024 — all occurred within ten years of the filing of this Complaint and are therefore timely on their face. To the extent any earlier acts are relevant to Plaintiffs' claims, the statute of limitations was equitably tolled during all periods in which Plaintiffs were unable to pursue legal action for reasons directly caused by Defendants' conduct. Plaintiff Uno Doe did not initially pursue legal action against the Islamic Republic of Iran because he was deeply concerned for the safety of his wife, children, and immediate and extended family members residing in Iran. The Islamic Republic has a well-documented practice of retaliating against the families of perceived dissidents and opposition figures, and Plaintiff reasonably feared that filing suit would expose his family members in Iran to arrest, torture, or worse at the hands of the very Defendants named herein. It was only as a result of the recent and significant shift in the international community's posture toward the regime — including increased international efforts to hold regime officials accountable for human rights violations

and the current administration's efforts to hold the Islamic Republic accountable — that Plaintiff concluded that the present circumstances justify pursuing legal action. This objectively reasonable fear of reprisal against third parties constitutes equitable grounds for tolling the limitations period. Additionally, certain acts of terrorism alleged herein constitute a continuing violation, with each new act of harassment, surveillance, intimidation, and threatened violence renewing the limitations period as to the overall campaign.

## STATEMENT OF FACTS

### I.    The Doe Family's Position in Pre-Revolutionary Iran

19.    Plaintiff Uno Doe's father, [FATHER], was born on July 1, 1944 in Iran. He was a civil engineer who owned 28 Caspian Sea villas. After the 1979 Revolution, the new government confiscated all 28 properties. [FATHER] was placed under a travel ban and was unable to leave Iran.

20.    Following the 1979 Islamic Revolution, [FATHER] was targeted by the new regime and subjected to harassment, property confiscation, and a travel ban.

21.    Plaintiff Uno Doe's mother, [MOTHER], was harassed and confronted by agents of the Islamic Republic while attending Utah State University in Logan, Utah, where she was subjected to surveillance and threats.

22.    Plaintiff Uno Doe's uncle, [UNCLE], was the CEO of Haft Tappeh Sugar Company. He was arrested and detained at Evin Prison by the Islamic Republic.

23.    Plaintiff Uno Doe's great-uncle, [GREAT-UNCLE 1], served as the Chief Financial Officer of the National Security apparatus of Iran under the prior regime. Following the Revolution, he fled to England.

24.    Plaintiff Uno Doe's great-uncle, [GREAT-UNCLE 2], commanded all armored divisions of the Iranian military under the prior regime. Following the Revolution, he fled to France.

6

25. Plaintiff Uno Doe's second cousin, [SECOND COUSIN 1], served as Commander of a major Naval base in Iran under the prior regime. Following the Revolution, he fled Iran.

26. Plaintiff Uno Doe's second cousin, [SECOND COUSIN 2], served as Minister of Education of Iran and as a United Nations Special Rapporteur. [SECOND COUSIN 2], became a prominent anti-regime activist and founder of the Flag of Freedom Organization. He has been the target of at least thirteen documented assassination attempts by the Islamic Republic. [SECOND COUSIN 2],collaborated extensively with Plaintiff Uno Doe on democracy and human rights initiatives.

## II. Initial Persecution in the United States

27. Plaintiff Uno Doe and his family came to the United States in 1984, settling in Logan, Utah, where his mother attended Utah State University. From the outset, agents of the Islamic Republic subjected the family to systematic harassment, threats, and intimidation on the university campus. Regime agents would block their path on campus and while using gymnasium facilities, and Plaintiff's mother was explicitly warned not to leave her children unattended.

28. In 1985, while the family was living in Logan, Utah, they received increasingly threatening communications. The family's residence was subsequently destroyed in an arson fire, which Plaintiffs attribute to agents of the Islamic Republic acting in retaliation for the family's association with and support for opposition to the regime. The family was displaced and forced to relocate.

## III. Plaintiff Uno Doe's Political Opposition Activities

29. The family relocated to Los Angeles in 1988. Plaintiff Uno Doe attended the University of Southern California, earning two master's degrees and a doctorate in International Political Economy and Public Policy. He became a prominent commentator on

7

Iranian affairs, appearing regularly on Voice of America (VOA) Persian Service and Iranian satellite television. He organized large-scale protest demonstrations in Los Angeles, including demonstrations attended by 15,000 to 20,000 participants, coordinating with the California Highway Patrol and obtaining all required permits.

30.    Beginning after September 11, 2001, Plaintiff Uno Doe was sought as a subject-matter expert on the Islamic Republic's terrorist activities. He met with Members of Congress to provide his analysis on the Iraq invasion, including briefings for the Senate Foreign Relations Committee, the House Foreign Affairs Committee, and the Senate Select Committee on Intelligence. He argued that the Islamic Republic's cooperation with extremist groups risked undermining U.S. efforts in Iraq and Afghanistan, and that without a change of regime, Iran would work to frustrate U.S. interests in the region, exacerbate sectarian tensions, and sponsor violence and terrorist acts against U.S. personnel and interests.

31.    In 2009, Plaintiff Uno Doe taught for the Combating Terrorism Center at West Point, providing instruction to FBI cadets at the FBI Academy in Quantico, Virginia. His training focused on Iran as a strategic key to the Middle East, including the geopolitical significance of the region, the collection and analysis of intelligence, and the Islamic Republic's state sponsorship of terrorism and weapons of mass destruction.

32.    In the fall of 2010, Plaintiff Uno Doe taught at the Centre for Counterintelligence and Security Studies, focusing on the Iranian regime's business networks and security structures. His instruction covered the counterintelligence and business intelligence networks the regime uses to acquire sanctioned goods and services, cyber threats associated with the regime, and the challenges of maintaining secure networks. The course also addressed maintaining operational security and developing both human and network intelligence in efforts to combat terrorism.

33.    From 2015 to 2021, Plaintiff Uno Doe provided training to the FBI's Joint Terrorism Task Force (JTTF) in Los Angeles. His training addressed threats from biological and chemical attacks, business network security, terrorist financial networks, state sponsorship and facilitation of terrorism, and strategies for effectively combating terrorist threats.

34.    Plaintiff Uno Doe advised two United States presidential campaigns on foreign policy and national security matters, providing analysis and briefings regarding threats to the United States homeland posed by the Iranian regime and its proxy networks.

35.    Plaintiff Uno Doe worked extensively with his cousin Dr. Ganji and the Albert Einstein Institution to develop and promote strategies for nonviolent resistance to the Islamic Republic's authoritarian rule. This collaboration contributed to the foundation of the Green Revolution of 2009.

36.    Following the large-scale protests, Plaintiff Uno Doe began receiving numerous threatening telephone calls. In or about mid-July 2003 — shortly after Plaintiff's naturalization ceremony on July 4, 2003 — Plaintiff was physically assaulted by unidentified individuals near his vehicle during a demonstration organized to raise awareness about the arrest and detention of Iranian students who had participated in protests at multiple universities in Iran during June 2003. The assailants forcibly knocked Plaintiff to the ground and shouted, "We know where you live," before fleeing the scene. As a direct result of this assault, which is believed to have been carried out by agents acting on behalf of the Iranian regime, Plaintiff sustained injuries to his back and shoulder.

### IV.    Systematic Campaign of Terror Against Plaintiffs in the United States and Abroad

37.    Beginning in the earliest years of the family's time in the United States, the Islamic Republic directed a sustained, multi-decade campaign of surveillance, harassment,

intimidation, and physical violence against Plaintiffs. This campaign has been continuous and has escalated in severity over time.

38.     Throughout Plaintiff Uno Doe's time in Los Angeles, agents of the Islamic Republic conducted regular surveillance of Plaintiff. On multiple occasions, Plaintiff was approached in parking lots by unknown individuals who made veiled references to his activities and those of his family members, demonstrating detailed knowledge of his movements and associations that could only have been obtained through coordinated intelligence surveillance.

39.     In or about February 2002, Plaintiff Uno Doe's vehicle was vandalized — all four tires were slashed — in what Plaintiff attributes to agents of the Islamic Republic acting in retaliation for his political opposition activities.

40.     Beginning in or about May 2017, Plaintiff Uno Doe's computer and communications devices were subjected to sophisticated cyberattacks. Files were corrupted, personal information was compromised, and Plaintiff was required to replace equipment and incur significant cybersecurity expenses. Based on the nature, sophistication, and targeting of the attacks, Plaintiff attributes this campaign of cyber intrusion to MOIS and its affiliated agents.

41.     Plaintiff Uno Doe received repeated threatening phone calls warning him to cease his opposition activities. On multiple occasions, callers demonstrated specific knowledge of Plaintiff's daily movements, the locations of family members, and details that could only have been obtained through active surveillance.

42.     In or about February 2017, agents of the Islamic Republic of Iran confronted Plaintiff Uno Doe at a restaurant in Los Angeles, California. The agents cornered Plaintiff in a hallway and held him against his will for approximately twenty minutes. During this detention, the agents physically assaulted Plaintiff by pushing him into a chair, pressing a

knee into his chest and shoulder, and placing a hand against his throat to prevent him from calling for help or leaving. The agents explicitly threatened Plaintiff, stating that the regime "knows how to deal" with individuals like him. As a direct result of this assault, Plaintiff sustained a shoulder injury that required surgical intervention in May 2017.

43.     On multiple occasions in Los Angeles, Plaintiff Uno Doe observed suspicious individuals monitoring his movements in parking facilities and public areas. On at least one occasion, Plaintiff's female companion was required to be escorted to her vehicle due to the presence of individuals believed to be regime surveillance operatives.

44.     In or about April 2024, while in Washington, D.C., Plaintiff Uno Doe was approached by several men believed to be agents of the Islamic Republic. These individuals engaged Plaintiff in conversation, explicitly referencing examples of persons who had been injured or killed for opposing the regime, which Plaintiff understood as direct threats against his life. When Plaintiff attempted to leave, the men encircled him and obstructed his path, attempting to corner him in a nearby alley. The agents physically laid hands on Plaintiff, repeatedly shaking him and striking his arms and shoulders while reiterating warnings about the fate of those who oppose the regime. Fearing for his safety, Plaintiff was able to enter a taxi and escape the situation.

45.     In or about January 2016, while traveling with his family to Germany, Plaintiff Uno Doe and his family were followed by unknown individuals from subway station to subway station. The individuals appeared to be monitoring Plaintiff's movements throughout the trip. Plaintiff and his family were able to escape by hailing a taxi.

46.     In or about January 2026, while participating in a lawful protest demonstration in Orlando, Florida, Plaintiff Uno Doe was approached by a vehicle bearing no license plate. The occupant of this vehicle made an explicit gun-finger gesture directed at Plaintiff and issued verbal threats. A second vehicle then accelerated directly toward Plaintiff at high

speed, narrowly missing him. Plaintiff attributes these acts to agents of the Islamic Republic acting in retaliation for his continued opposition activities.

### V.     Campaign of Intimidation Against Plaintiff Dos Doe

47.     Plaintiff Dos Doe, in her own right, was targeted by Defendants as a means of pressuring and intimidating Plaintiff Uno Doe, and as a target of retaliation in her own right for her association with and support of Plaintiff Uno Doe's opposition activities.

48.     Regime agents contacted Plaintiff Dos Doe's parents directly, informing them of the family's location and activities and making clear that the regime was monitoring the entire family. These contacts were designed to maximize psychological pressure on Plaintiff Dos Doe and to communicate to her that her family members were within the regime's reach.

49.     On multiple occasions, Plaintiff Dos Doe observed suspicious individuals monitoring her activities. She received threatening calls at all hours of the day and night. Despite changing her telephone number on multiple occasions, the threatening calls resumed each time, demonstrating that agents of the regime had access to updated contact information.

50.     The relentless campaign of threats, surveillance, and intimidation directed at Plaintiff Dos Doe has caused her severe psychological harm, including elevated blood pressure, anxiety, sleep disruption, and ongoing fear for her safety and the safety of her family.

### VI.     Damages Suffered by Plaintiffs

51.     As a direct and proximate result of Defendants' acts, Plaintiff Uno Doe has suffered severe and lasting physical and psychological injuries, including: a shoulder injury requiring surgical intervention in May 2017; back and shoulder injuries from the 2003 assault; post-traumatic stress disorder; chronic insomnia; recurrent nightmares; fear, anxiety, and hypervigilance; and significant impairment to his professional and family life.

52.   Plaintiff Dos Doe has suffered severe psychological and emotional harm as a direct and proximate result of Defendants' acts, including elevated blood pressure, anxiety, sleep disruption, and ongoing fear for the safety of herself and her family.

53.   Plaintiffs and their children were forced to uproot their lives and relocate from California to Florida in 2021 in a direct attempt to escape the ongoing surveillance and threats to which they were subjected in Los Angeles.

## FIRST CAUSE OF ACTION

### (Torture — Torture Victim Protection Act and FSIA § 1605A)

54.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55.   The Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, creates a cause of action against individuals who, under actual or apparent authority, or color of law, of any foreign nation, subject an individual to torture. Additionally, 28 U.S.C. § 1605A creates a cause of action against foreign states that are designated state sponsors of terrorism for acts of torture committed by their officials, employees, or agents.

56.   The acts of torture and systematic abuse inflicted upon Plaintiffs as described above — including the February 2017 detention and physical assault in Los Angeles, the April 2024 physical assault in Washington, D.C., the ongoing cyberattacks, the threatening calls, the arson, and the continuing campaign of violence and intimidation — were deliberately and intentionally inflicted by officials, employees, and agents of the Islamic Republic of Iran, the IRGC, and MOIS, acting under the actual or apparent authority or color of law of the Islamic Republic of Iran.

57.   As a direct and proximate result of the torture inflicted upon Plaintiffs by Defendants, Plaintiffs have suffered and continue to suffer severe, lasting physical and emotional injuries, including but not limited to: physical injuries requiring surgical

13

intervention; post-traumatic stress disorder and other psychological trauma; ongoing fear, anxiety, and hypervigilance; sleep disorders and recurring nightmares; damage to personal and professional relationships; and significant diminishment in quality of life.

58.    The acts described above constitute torture within the meaning of the TVPA and § 1605A and are actionable thereunder.

## SECOND CAUSE OF ACTION

### (Hostage Taking — Foreign Sovereign Immunities Act)

59.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60.    The FSIA, 28 U.S.C. § 1605A, creates a federal cause of action against a foreign state that is or was a state sponsor of terrorism for personal injury or death caused by acts of hostage taking or the provision of material support or resources for such acts.

61.    "Hostage taking" as defined by the International Convention Against the Taking of Hostages means seizing or detaining and threatening to kill, injure, or continue to detain another person in order to compel a third party to do or abstain from doing any act as an explicit or implicit condition for the release of the hostage.

62.    The unlawful physical detention and restraint of Plaintiff Uno Doe at the restaurant in Los Angeles in February 2017 — where agents held him against his will for approximately twenty minutes, physically assaulted him by pressing a knee into his chest and shoulder, placed a hand against his throat to prevent him from calling for help, and caused a shoulder injury requiring surgery in May 2017 — and the unlawful encirclement, physical assault, and obstruction in Washington, D.C. in April 2024, where agents laid hands on Plaintiff, shook him, and struck his arms and shoulders while preventing his departure, constituted hostage taking within the meaning of the FSIA because Plaintiff was seized and

14

detained, threatened with injury, physically harmed, and these acts were carried out to compel him to cease his political opposition activities.

63.     These acts of hostage taking were carried out by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

64.     As a direct and proximate result of the hostage taking of Plaintiffs by Defendants, Plaintiffs have suffered severe physical injuries, emotional distress, and psychological trauma, and the hostage taking is actionable under 28 U.S.C. § 1605A.

## THIRD CAUSE OF ACTION

### (Terrorism — Foreign Sovereign Immunities Act / Anti-Terrorism Act as Amended by JASTA)

65.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     The FSIA, 28 U.S.C. § 1605A, creates a federal cause of action against a foreign state that is or was a state sponsor of terrorism for personal injury or death caused by the provision of material support or resources for acts of terrorism.

67.     The ongoing campaign of harassment, intimidation, threats, arson, cyberattacks, and physical violence against Plaintiffs described above constitutes acts of international terrorism as defined by United States and international law, including but not limited to:

a.      The 1985 arson of the family residence in Logan, Utah;

b.      The systematic campus harassment and intimidation of Plaintiff's mother at Utah State University;

c.      The ongoing threats and surveillance in Los Angeles;

d.      The physical assault, unlawful detention, and throat restraint at a Los Angeles restaurant in February 2017, causing a shoulder injury requiring surgery;

e.      The cyberattacks on Plaintiff's computer and communications beginning in 2017;

f.      The threatening phone calls directed at Plaintiff Dos Doe;

g.      The unlawful physical encirclement and assault in Washington, D.C. in April 2024; and

h.      The vehicular assault and death threat in Orlando, Florida in January 2026.

68.     These acts were intended to intimidate and coerce Plaintiffs, to retaliate against them for their opposition to the Islamic Republic, and to suppress any potential criticism of the regime by demonstrating its ability to reach perceived enemies even within the United States.

69.     Iran, the IRGC, and MOIS provided material support and resources for these acts of terrorism, including but not limited to funding, training, intelligence, direction, and logistical support to the individuals who carried out these acts.

70.     As a direct and proximate result of these acts of terrorism, Plaintiffs have suffered and continue to suffer severe physical and psychological injuries, including post-traumatic stress disorder, ongoing fear, anxiety and trauma, and forced relocation. The acts of terrorism directed against Plaintiffs by Defendants are actionable under 28 U.S.C. § 1605A. In the alternative, and to the extent any of the foregoing acts of international terrorism occurred within the United States, those acts are independently actionable under the Anti-Terrorism Act, as amended by JASTA, 18 U.S.C. § 2333(a) and (d). The predicate acts occurring on United States soil include, without limitation: (a) the February 2017 assault and unlawful detention of Plaintiff Uno Doe at the Los Angeles restaurant; (b) the April 2024 physical assault and encirclement of Plaintiff Uno Doe in Washington, D.C.; (c) the January 2026 vehicular assault and death threat in Orlando, Florida; (d) the 2017 cyberattacks directed at Plaintiffs' devices and networks while Plaintiffs were located in the United States; and (e) the

threatening calls directed at Plaintiff Dos Doe while she was located in the United States. Each of these acts constitutes an act of international terrorism within the meaning of 18 U.S.C. § 2331(1), was carried out by an agent, employee, or instrumentality of Defendants, and caused Plaintiffs to suffer injury to their persons and property. These acts are timely on their face under the ATA's ten-year statute of limitations, 18 U.S.C. § 2335. The Islamic Republic of Iran, through the IRGC and MOIS, provided material support and resources, directed, and aided and abetted the commission of these acts within the meaning of 18 U.S.C. § 2333(d), as amended by JASTA.

## **FOURTH CAUSE OF ACTION**

### **(Intentional Infliction of Emotional Distress — Foreign Sovereign Immunities Act)**

71.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.    The FSIA, 28 U.S.C. § 1605A, permits claims for intentional infliction of emotional distress against foreign states designated as state sponsors of terrorism. The conduct of Defendants as described above was extreme and outrageous and exceeded all bounds of decency.

73.    Such conduct was specifically intended to cause Plaintiffs severe emotional distress, and did in fact cause Plaintiffs severe emotional distress, including by: (a) subjecting Plaintiff Uno Doe to physical assault, detention, and credible death threats over a period of more than four decades; (b) conducting surveillance of Plaintiffs' residence and movements; (c) harassing and threatening Plaintiff Dos Doe through relentless phone calls and surveillance; (d) threatening the safety of Plaintiffs' family members in Iran; and (e) compelling Plaintiffs to uproot their lives and relocate their family.

74. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiffs have suffered severe emotional distress manifesting in physical symptoms including a shoulder injury requiring surgery, elevated blood pressure, chronic insomnia, recurrent nightmares, and other physical and psychological manifestations of trauma. The intentional infliction of emotional distress by Defendants is actionable under 28 U.S.C. § 1605A.

**FIFTH CAUSE OF ACTION**

**(Assault and Battery — Foreign Sovereign Immunities Act)**

75. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76. The FSIA, 28 U.S.C. § 1605A, permits claims for assault and battery against foreign states designated as state sponsors of terrorism. The physical attacks against Plaintiff Uno Doe described above, including: (a) the physical assault in the Los Angeles restaurant in February 2017, during which agents pushed Plaintiff into a chair, pressed a knee into his chest and shoulder, and placed a hand against his throat, causing a shoulder injury requiring surgery; (b) the physical encirclement, shaking, and striking of Plaintiff's arms and shoulders in Washington, D.C. in April 2024; (c) the vehicular assault in Orlando, Florida in January 2026, in which a vehicle was deliberately accelerated at Plaintiff at high speed; and (d) the physical assault near Plaintiff's vehicle in mid-July 2003, in which Plaintiff was knocked to the ground and threatened, constituted batteries upon Plaintiff.

77. Additionally, Defendants' conduct created a reasonable apprehension of immediate harmful contact with Plaintiff's person on each occasion, constituting assault. These assaults and batteries were carried out by officials, employees, or agents of Defendants while acting within the scope of their office, employment, or agency.

18

78. As a direct and proximate result of these assaults and batteries, Plaintiffs have suffered physical injuries, pain, suffering, and emotional distress. The assaults and batteries committed against Plaintiffs by Defendants are actionable under 28 U.S.C. § 1605A.

### SIXTH CAUSE OF ACTION

### (Civil Conspiracy — Foreign Sovereign Immunities Act)

79. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80. Defendants and their officials, employees, and agents conspired, confederated, and agreed to commit the tortious acts described above against Plaintiffs over a period of more than four decades.

81. In furtherance of this conspiracy, Defendants and their co-conspirators committed numerous overt acts, including but not limited to: (a) the 1985 arson of Plaintiffs' residence; (b) the ongoing surveillance of Plaintiff Uno Doe in the United States and abroad; (c) the multiple physical assaults against Plaintiff Uno Doe in Los Angeles, Washington D.C., and Orlando; (d) the cyberattacks on Plaintiff's devices and networks; (e) the threatening calls directed at Plaintiff Dos Doe; and (f) the continuous campaign of psychological intimidation directed at Plaintiffs.

82. As a direct and proximate result of this conspiracy, Plaintiffs have suffered the injuries and damages described throughout this Complaint. The civil conspiracy engaged in by Defendants is actionable under 28 U.S.C. § 1605A.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

A.    Awarding Plaintiffs compensatory damages in an amount to be determined at trial, but not less than $100,000,000, for the physical, psychological, and emotional injuries they have suffered;

B.    Awarding Plaintiffs economic damages for medical expenses, therapy costs, cybersecurity costs, relocation costs, lost earning capacity, and other financial losses in an amount to be determined at trial, but not less than $10,000,000;

C.    Awarding Plaintiffs punitive damages in an amount to be determined at trial, but not less than $500,000,000, sufficient to punish Defendants for their outrageous conduct and to deter them and others from similar conduct in the future;

D.    Designating the judgment entered in this action as one for purposes of 28 U.S.C. § 1605A, thereby making Plaintiffs eligible for compensation through the United States Victims of State Sponsored Terrorism Fund;

E.    Awarding Plaintiffs prejudgment and post-judgment interest;

F.    Awarding Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

G.    Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

79.    Plaintiff demands a trial by jury on all issues so triable.


Dated March 24, 2026


Respectfully submitted,

/s/Jeffrey D. Katz
Jeffrey D. Katz Bar#17071
JDKatz, P.C.
4800 Montgomery Avenue, Suite 600
Bethesda, MD 20814
Phone: (240) 743-5408
Email: Jeffrey@JDKatz.com
