**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DOE et at.**<br>Plaintiff,<br><br>v.<br>**THE ISLAMIC REPUBLIC OF IRAN**<br>et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | **Case No. 1:26-cv-01002-APM** |

**PLAINTIFFS' RENEWED MOTION FOR ALTERNATIVE SERVICE BY ELECTRONIC MAIL AND MEMORANDUM IN SUPPORT**

Pursuant to this Court's Minute Order of June 18, 2026 authorizing renewal on or after July 20, 2026, Plaintiffs Uno Doe and Dos Doe respectfully renew their motion for alternative service by electronic mail upon Defendants the Islamic Republic of Iran ("Iran"), the Islamic Revolutionary Guard Corps ("IRGC"), and the Ministry of Intelligence and Security of the Islamic Republic of Iran ("MOIS"). This Renewed Motion squarely addresses each of the three concerns identified in the Court's June 18 Order.

First, the 30-day observational period the Court prescribed has elapsed, and events over that period have moved decisively away from — not toward — the reopening of conventional service channels. In the seventeen days since July 8, 2026, the President has declared the Islamabad Memorandum of Understanding ceasefire "over," the United States military has conducted seven consecutive nights of airstrikes on Iranian targets, Iran's Islamic Revolutionary Guard Corps has attacked United States military installations in four Gulf states, two United States service members have been killed and one is missing in action from Iranian strikes in Jordan, and the Iranian government has formally repudiated the Memorandum of Understanding. Second, undersigned counsel has confirmed by direct inquiry that DHL, UPS, and FedEx — the three international carriers with any prior capability of delivering documents to Iran — will not

accept shipments to Iran at this time. Third, any apparent delay in Plaintiffs' initial motion reflected precisely the exhaustion analysis the Court now requires, not want of diligence.

The intra-District landscape has also crystallized in the interim. Multiple judges of this Court have now addressed the question. Magistrate Judge Upadhyaya in *Mahvi v. Islamic Republic of Iran*, No. 1:25-cv-00059-TNM-MAU (D.D.C. June 17, 2026), granted alternative service via electronic mail to iran@un.int on materially identical facts. Judge Moss in *Dehnoushi v. Islamic Republic of Iran*, No. 1:25-cv-02109-RDM (D.D.C. June 22, 2026), and Magistrate Judge Faruqui in *Akrami v. Islamic Republic of Iran*, No. 1:25-cv-00428-TNM-ZMF (D.D.C. July 14, 2026), denied similar relief in cases where § 1608(a)(3) service via United States Postal Service certified mail had actually been attempted — a procedural posture materially different from that presented here, where § 1608(a)(3) is operationally impossible. This Court should follow *Mahvi*.

## I. PROCEDURAL HISTORY

Plaintiffs filed the Complaint on March 24, 2026, together with a sealed motion to proceed under pseudonym. ECF Nos. 1-3. Chief Judge Boasberg granted the pseudonym motion on April 30, 2026. ECF No. 3. The case was assigned to this Court on May 4, 2026. Following correction of the summons documents, this Court's Clerk issued three summonses electronically as to Iran, the IRGC, and MOIS on May 7, 2026. ECF No. 6.

On June 9, 2026, this Court entered a Minute Order directing Plaintiffs to update the Court on their service efforts by June 16, 2026. Plaintiffs filed the required Status Report on June 10, 2026, ECF No. 7, and — one day later — filed their Motion for Alternative Service by Electronic Mail and to Deem Service Complete. ECF No. 9. The Motion detailed the operational impossibility of service under 28 U.S.C. § 1608(a)(3) (United States Postal Service having suspended all international mail acceptance to Iran) and under 28 U.S.C. § 1608(a)(4) (State

Department having confirmed on June 15, 2026 that no regular diplomatic shipments between Bern and Tehran currently exist).

On June 18, 2026, this Court denied the Motion without prejudice by Minute Order. The Court identified three specific concerns:

> Recent developments between the United States and Iran suggest that previously closed avenues to service may soon reopen for purposes of 28 U.S.C. § 1608(a)(3) and (a)(4). The court thinks it the better part of caution to allow 30 days to pass before determining whether authorizing alternative service is appropriate. The court notes that Plaintiffs themselves allowed three months to pass before raising this matter with the court. See Pls.' Mot. at 5. Also, Plaintiffs' motion makes no representation about the possibility of effecting service pursuant to subsection (a)(3) via DHL or some other international carrier. *See Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557, 559-60 (D.D.C. 2017) (finding service perfected under subsection (a)(3) on Iran via DHL delivery). Plaintiffs may renew their request for alternative service on or after July 20, 2026.

Minute Order (June 18, 2026). This Renewed Motion timely responds to each concern.

## II. THIS RENEWED MOTION SQUARELY ADDRESSES THE COURT'S THREE JUNE 18 CONCERNS

### *A. The 30-Day Observational Period Has Elapsed, and Conventional Service Channels Have Not Reopened — They Have Further Closed.*

The Court expressed hope on June 18 that "previously closed avenues to service may soon reopen for purposes of 28 U.S.C. § 1608(a)(3) and (a)(4)." That prediction, reasonable when made — the Islamabad Memorandum of Understanding had been signed only the day before — has been decisively falsified by the events of the intervening thirty days.

On July 6-7, 2026, Iran attacked three commercial vessels in the Strait of Hormuz, including the Qatari LNG tanker *Al Rekayat* and the Saudi crude tanker *Wedyan*. *See Tanker Fire After Being Struck in Strait of Hormuz, British Military Says*, Wash. Post (July 7, 2026), https://www.washingtonpost.com/world/2026/07/07/tanker-fire-after-being-struck-strait-hormuz-british-military-says/. On July 7-8, the United States military struck approximately 80 Iranian targets. On July 8, 2026, from the NATO summit in Ankara, Turkey, the President declared the Islamabad Memorandum of Understanding ceasefire "over." *See US Strikes*

*Southern Iran, Tehran Claims Attacks on US Military Sites*, Al Jazeera (July 7, 2026), https://www.aljazeera.com/news/2026/7/7/us-says-strikes-launched-as-explosions-heard-in-southern-iran.

On July 8-9, 2026, Iran's Islamic Revolutionary Guard Corps attacked United States military installations at Arifjan and Ali Al Salem in Kuwait, Juffair and Sheikh Isa in Bahrain, U.S. facilities in Qatar, and the Azraq military base in Jordan. *See US, Iran Launch More Attacks as Mediators Urge Both Sides to Uphold MoU*, Al Jazeera (July 9, 2026), https://www.aljazeera.com/news/2026/7/9/us-iran-launch-more-attacks-as-mediators-urge-warring-sides-to-uphold-mou.

Rather than de-escalating during the Court's 30-day observation window, the conflict has expanded. Between July 12 and July 18, the United States military conducted **seven consecutive nights** of airstrikes on Iranian targets. *See July 17, 2026 — Iran and US Widen Attacks as Renewed Conflict Shows No Sign of De-escalating*, CNN (July 17, 2026), https://www.cnn.com/2026/07/17/world/live-news/iran-war-trump. Iran attacked additional commercial vessels, including the MV *GFS Galaxy*, where an Indian seafarer was killed. *Id.* Iran again fired on Qatar. *See July 16, 2026 — Qatar, Kuwait Fend Off Fresh Attacks, US Continues Iran Strikes*, CNN (July 16, 2026), https://www.cnn.com/2026/07/16/world/live-news/iran-war-trump.

Most consequentially, four days ago — on July 18, 2026 — the United States military announced that two United States service members were killed and one is missing in action following Iranian strikes in Jordan, marking the first American military deaths in the conflict since March. *See US Reports Its First Military Deaths Since March After a Week of Renewed Fighting with Iran*, CNN (July 18, 2026), https://www.cnn.com/2026/07/18/world/live-news/iran-war-trump. Also on July 18, 2026, the Iranian government formally repudiated the

Islamabad Memorandum of Understanding, with Iran's Supreme Leader publicly deriding the President's signature on the agreement as "worthless." *Id.*

On the *statutory service question* this Court must decide, the situation is unambiguous: (i) the United States Postal Service's suspension of international mail acceptance to Iran, in effect since March 3, 2026, remains in effect as of the filing of this Renewed Motion; and (ii) the United States Department of State has provided no supplemental communication modifying its June 15, 2026 confirmation that "there are still no regular diplomatic shipments between Bern and Tehran, which continues to inhibit the ability to transmit documents in either direction." ECF No. 9, Ex. C. In the current environment of active and escalating hostilities, the channels foreclosed on June 18 have not reopened — they are more firmly closed than ever.

***B. DHL, UPS, and FedEx All Confirmed on July 17, 2026 That International Delivery to Iran Is Currently Unavailable.***

The Court noted that Plaintiffs' initial Motion "makes no representation about the possibility of effecting service pursuant to subsection (a)(3) via DHL or some other international carrier," citing *Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557, 559-60 (D.D.C. 2017). That representation is now made — and made under materially different current circumstances than those obtaining when *Karcher* was decided in 2017.

On Friday, July 17, 2026, undersigned counsel and Sion Evans, paralegal at JDKatz, P.C., directly contacted DHL, UPS, and FedEx — the three international couriers that maintained any service to Iran within the past decade — to inquire whether any of them could effect delivery of the summons, Complaint, notice of suit, and required Farsi translations to Iran's Ministry of Foreign Affairs. Each of the three carriers confirmed that international shipment to Iran is not currently available. A Declaration of Sion Evans setting forth the details of these inquiries is attached hereto as Exhibit A.

*Karcher* was decided nine years before the March 3, 2026 USPS suspension, the November 2025 acceleration of United States sanctions on Iranian carriage and shipping, and the current active hostilities. In *Karcher*, DHL had operational service capability to Iran; here, DHL has confirmed that it does not. Whatever *Karcher* required of plaintiffs in 2017, the record Plaintiffs now present — that USPS, DHL, UPS, and FedEx all confirm the unavailability of service to Iran — completes the § 1608(a)(3) exhaustion inquiry.

A deeper point about *Karcher* bears mention. The *Karcher* docket reflects that plaintiffs there filed a specific request that "the Clerk effect service of one copy of the summons, complaint, and notice of suit ... *by DHL*, to the head of the ministry of foreign affairs, pursuant to 28 U.S.C. 1608(a)(3)." *See Karcher*, ECF No. 27 (Nov. 30, 2016). DHL then accepted the shipment, cleared Iranian customs, delivered the package to Iran's Ministry of Foreign Affairs in Tehran, and returned a signed receipt to the Clerk. It was that *operational capability* — DHL's ability in 2016 to accept, transit, and deliver — that produced the effective (a)(3) service Judge Kollar-Kotelly credited. *Karcher* thus holds that DHL is a valid "form of mail requiring a signed receipt" *when DHL can deliver*. It does not hold that plaintiffs must indefinitely attempt carriers who cannot.

Nor does § 1608(a)(3) itself require that every conceivable carrier be tried. The statute requires "any form of mail requiring a signed receipt." 28 U.S.C. § 1608(a)(3). *Karcher* recognized DHL as one such form. The statute does not, however, transform "any form of mail" into "every form of mail" as a condition of exhaustion. When *all forms* of signed-receipt mail — postal and courier alike — that are operationally capable of reaching Iran have been surveyed and confirmed unavailable, § 1608(a)(3) is exhausted. Plaintiffs' July 17, 2026 inquiries to DHL, UPS, and FedEx complete that survey.

***C. Plaintiffs' Filing Cadence Reflected the Exhaustion Analysis This Court Now Requires.***

The Court observed that Plaintiffs "allowed three months to pass before raising this matter with the court." With respect, that timing reflects diligence rather than delay: Plaintiffs' Complaint was filed on March 24, 2026, but the case was assigned to this Court only on May 4, 2026 — five weeks later — and summonses were not issued until May 7, 2026, following correction of the summons documents. Plaintiffs filed their Motion for Alternative Service on June 11, 2026 — thirty-five days after issuance of summonses. During those thirty-five days, Plaintiffs' counsel evaluated the availability of § 1608(a)(3) mail service, verified with the United States Department of State the status of § 1608(a)(4) diplomatic service, and confirmed the operational impossibility of both. Plaintiffs did not simply file the Motion on the earliest possible date; they investigated whether an alternative service motion was in fact necessary before making one.

Now, on this Renewed Motion, Plaintiffs have also completed the DHL, UPS, and FedEx inquiries the Court directed and have provided the Court with a documented factual predicate for the alternative service authorized under 28 U.S.C. § 1608(a).

## III. THE INTRA-DISTRICT AUTHORITY: FOLLOWING MAHVI, DISTINGUISHING DEHNOUSHI AND AKRAMI

The timing of the three rulings that now bear on this Court's decision warrants brief note. Plaintiffs filed the underlying Motion for Alternative Service on June 11, 2026, ECF No. 9, seeking prompt guidance from this Court on the operational impasse in effecting service under 28 U.S.C. § 1608(a). Six days later, on June 17, 2026, Magistrate Judge Upadhyaya issued the *Mahvi* minute order — the single most directly on-point ruling in this District on the question presented. *Mahvi* thus issued *one day* before this Court's June 18 Minute Order. Plaintiffs did not have sufficient time in that single-day window to file a notice of supplemental authority, and were unable to present *Mahvi* to this Court before it ruled. Four days after this Court's Minute

Order, on June 22, 2026, Judge Moss issued the *Dehnoushi* memorandum opinion. Twenty-two days later, on July 14, 2026, Magistrate Judge Faruqui issued the *Akrami* memorandum opinion, which cited *Dehnoushi* in support of its holding. Plaintiffs surface all three rulings now, at their first available opportunity, for this Court's consideration.

The three rulings squarely present the question this Court now confronts. *Mahvi* and *Akrami* were both referred by Judge McFadden to magistrate judges of this Court; *Dehnoushi* is a Moss opinion. All three concern the same core question: whether, and when, a court may authorize alternative service on Iran under 28 U.S.C. § 1608(a).

***A. Mahvi Grants Alternative Service on Materially Identical Facts.***

In *Mahvi v. Islamic Republic of Iran*, No. 1:25-cv-00059-TNM-MAU (D.D.C. June 17, 2026) (Upadhyaya, M.J.), Magistrate Judge Upadhyaya granted alternative service by electronic mail to iran@un.int as to Iran, the IRGC, and MOIS. *See* Exhibit B (Mahvi Minute Order). The Mahvi minute order reasoned as follows:

> 28 U.S.C. § 1608(a) provides four methods to serve a foreign nation. Plaintiff has exhausted the four statutory methods and now seeks to serve the Defendants via email. . . . If Plaintiff strictly complied with § 1608(a)'s requirements but was unsuccessful at serving Defendants, Plaintiff may serve Defendants by alternate methods. Any alternate method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Judge Upadhyaya held that email service to iran@un.int satisfied the *Mullane* standard because Iran "maintains an official, diplomatic presence with the United Nations in New York and provides the aforementioned email on its Ministry of Foreign Affairs webpage," making that email address "reasonably calculated to apprise Iran of the pendency of the action and afford it the opportunity to respond." *Id.* Judge Upadhyaya ordered Plaintiffs to effect service by July 17, 2026, and to file a certificate of service within seven days. Service was completed in *Mahvi* pursuant to that Order.

*Mahvi*'s procedural posture matches this case almost exactly. In both cases: (i) the plaintiffs sued Iran, the IRGC, and MOIS under the FSIA; (ii) service under § 1608(a)(3) was impossible because the United States Postal Service had suspended international mail acceptance to Iran; (iii) service under § 1608(a)(4) was impossible because the diplomatic conduit between Bern and Tehran was not operational; and (iv) plaintiffs sought court-ordered service by email to iran@un.int. *Mahvi* grants exactly the relief this Court should now grant.

***B. Dehnoushi and Akrami Are Both Distinguishable Because § 1608(a)(3) Service via USPS Certified Mail Had Been Attempted in Both Cases, Whereas It Cannot Be Attempted Here.***

Five days after *Mahvi*, Judge Moss issued a memorandum opinion denying alternative service in *Dehnoushi v. Islamic Republic of Iran*, No. 1:25-cv-02109-RDM (D.D.C. June 22, 2026). *See* Exhibit C (*Dehnoushi* Memorandum Opinion). Twenty-two days later, Magistrate Judge Faruqui issued a memorandum opinion denying alternative service in *Akrami v. Islamic Republic of Iran*, No. 1:25-cv-00428-TNM-ZMF (D.D.C. July 14, 2026). *See* Exhibit D (*Akrami* Memorandum Opinion). Judge Faruqui expressly cited *Dehnoushi* in support of his holding. Undersigned counsel represents the plaintiffs in all three cases — *Mahvi*, *Dehnoushi*, and *Akrami*.

*Dehnoushi* and *Akrami* are distinguishable from this case on a fact material to the § 1608(a)(3) analysis: in both cases, service under 28 U.S.C. § 1608(a)(3) had actually been attempted via United States Postal Service certified mail. In *Akrami*, certified mail addressed to Iran's Ministry of Foreign Affairs, dispatched by the Clerk of this Court, was transmitted through USPS, delivered to Iranian postal authorities, and returned to the Clerk bearing Farsi postal markings indicating refusal. In *Dehnoushi*, the plaintiffs proceeded through § 1608(a)(3) via USPS registered mail dispatched by the Clerk on July 18, 2025 — approximately eight months before the March 3, 2026 USPS suspension of Iranian mail service. As Judge Moss observed in *Dehnoushi*, Iran "has refused to accept service by certified mail." *Dehnoushi* at 3. Both cases thus arose in a procedural posture where the plaintiffs held completed but unsuccessful §

1608(a)(3) service records — documented mail dispatch, delivery, and refusal — even though service was not effective.

In that shared posture, both courts reasoned that § 1608(a) does not empower a court to fashion an alternative to the four methods Congress enumerated once a plaintiff has completed a § 1608(a)(3) attempt without securing service. Judge Moss held in *Dehnoushi* that a plaintiff's inability to effect service under § 1608(a) "does not authorize the Court to … authorize alternative service on a foreign state beyond the methods prescribed by Congress in Section 1608(a)." *Dehnoushi* at 3 (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994)). Judge Faruqui reached the same conclusion in *Akrami*, concluding that Congress "wrote no safety valve" into § 1608(a) beyond its four enumerated methods.

That reasoning has no application here. Unlike *Dehnoushi* and *Akrami*, this Court's Plaintiffs cannot attempt § 1608(a)(3) at all. The USPS suspension of Iranian mail service — which took effect March 3, 2026, weeks before this Court's Clerk issued the summonses on May 7 — makes it operationally impossible to dispatch certified mail to Iran. DHL, UPS, and FedEx have confirmed as of July 17, 2026 that international shipment to Iran is unavailable through any commercial carrier. Plaintiffs are not asking this Court to declare that a completed but unsuccessful § 1608(a)(3) attempt satisfies the statute; they are asking this Court to authorize alternative service because § 1608(a)(3) is physically impossible to attempt.

This is precisely the *Mahvi* scenario. And *Mahvi*'s reasoning — that a plaintiff who "strictly complied with § 1608(a)'s requirements but was unsuccessful" (or, *a fortiori*, who was operationally prevented from attempting § 1608(a)(3) at all) may proceed by alternative methods that satisfy the *Mullane* due-process standard — squarely governs. In *Dehnoushi*'s and *Akrami*'s language, *this case does not present the safety-valve issue those decisions rejected*; it presents the antecedent question of what service is possible when the four enumerated methods are operationally inaccessible.

## IV. SERVICE VIA IRAN@UN.INT SATISFIES DUE PROCESS

Under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), alternative service is proper where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Email service to iran@un.int satisfies that standard.

Iran maintains an official diplomatic presence with the United Nations in New York and publishes iran@un.int as the contact address on its own Ministry of Foreign Affairs webpage. See Islamic Republic of Iran, Ministry of Foreign Affairs, Specifications USA-New York Ambassadors Information, https://en.mfa.gov.ir/portal/product/6042/380/USA-New-York. Judge Upadhyaya in *Mahvi* and Judge Nichols in *Farshid Doe v. Islamic Revolutionary Guard Corps*, No. 1:26-cv-00334 (CJN), ECF No. 10 (D.D.C. June 9, 2026), and Judge Reyes in *Hutan v. Islamic Republic of Iran*, No. 1:25-cv-00837-ACR (D.D.C. Apr. 16, 2026), have each concluded that service to iran@un.int satisfies the *Mullane* standard on materially identical facts.

Furthermore, the IRGC and MOIS are, under settled D.D.C. precedent, treated as the foreign state itself for FSIA service purposes. *See Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 313 (D.D.C. 2022) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994)). Email service to iran@un.int accordingly effects service upon all three Defendants.

## V. CONCLUSION AND PRAYER FOR RELIEF

The 30-day observational period the Court prescribed has passed. Every relevant factual predicate has moved decisively against reopening of conventional service. Plaintiffs have now completed the DHL, UPS, and FedEx inquiries the Court directed. The intra-District authority most closely on point — *Mahvi* — grants exactly the relief Plaintiffs seek; the contrary authority — *Akrami* — rests on a factual posture materially different from this case.

Consistent with Judge Upadhyaya's ruling in *Mahvi*, Judge Reyes's ruling in *Hutan*, and Judge Nichols's ruling in *Farshid Doe*, Plaintiffs respectfully request that this Court:

**1. GRANT** this Renewed Motion for Alternative Service;

**2. AUTHORIZE** Plaintiffs to serve Defendants by transmitting the summons, the Complaint, and the required notices, together with a Farsi translation of each, by electronic mail to the Permanent Mission of the Islamic Republic of Iran to the United Nations at iran@un.int; and

**3. REQUIRE** Plaintiffs to file a certificate of service within seven days of effecting service.

Dated July 22, 2026

Respectfully submitted,

/s/Jeffrey D. Katz
Jeffrey D. Katz Bar#17071
JDKatz, P.C.
4800 Montgomery Avenue, Suite 600
Bethesda, MD 20814
Phone: (240) 743-5408
Email: Jeffrey@JDKatz.com
*Attorney for Plaintiffs*